WO                                                                                        SVK

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Joseph A. Trenton, | ) No. CV 06-2164-PHX-MHM (DKD) |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Dora Schriro, et al., | ) |
| Defendants. | ) |

Plaintiff Joseph A. Trenton brought this civil rights action under 42 U.S.C. § 1983 against various officials of the Arizona Department of Corrections (ADC). (Doc. #1.) Plaintiff moves for an Order to Show Cause and Preliminary Injunction directing Defendants to place him in Protective Segregation. (Doc. #92.) The motion is fully briefed. (Doc. ##95, 102, 119, 126, 132.)

Plaintiff also moves for sanctions against Defendant Rollins. (Doc. #106.) That motion is also fully briefed. (Doc. #109, 113.)

The Court will deny the motions.

**I.    Background**

In his First Amended Complaint, Plaintiff raised claims alleging that Schriro, Rollins, Rubi, McComas, and Sanders failed to protect him when they housed him with inmates on his Do Not House With (DNHW) list and refused his requests for placement into Protective Segregation. He also alleged that Sanders transferred him in retaliation for filing grievances against her. Plaintiff claimed he was assaulted on March 8, 2006, after the transfer.

Plaintiff previously filed a motion for a preliminary injunction ordering his placement in Protective Segregation, which was denied. (Doc. #62.) Plaintiff moved for reconsideration of that Order, and the motion was denied. (Doc. #75.)

**II.      Motion for Preliminary Injunction**

    **A.      Legal Standard**

A preliminary injunction is an extraordinary and drastic remedy and "one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (*per curiam*) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948,129-130 (2d ed. 1995)). A preliminary injunction will not be granted absent a clear showing of likely success in the underlying claim and a significant threat of irreparable injury. Warsoldier v. Woodford, 418 F.3d 989, 993-94 (9th Cir. 2005); Pratt v. Rowland, 65 F.3d 802, 805 (9th Cir. 1995). Alternately, a party may show that serious questions going to the merits were raised and the balance of hardships tips sharply in his favor. Warsoldier, 418 F.3d at 994. These two alternatives are extremes of a single continuum, rather than two separate tests. Nike, Inc. v. McCarthy, 379 F.3d 576, 580 (9th Cir. 2004). Thus, the greater the relative hardship to the moving party, the less probability of success must be shown. Id. (citing Walczak v. EPL Prolong, Inc., 198 F.3d 725, 731 (9th Cir. 1999)). Under either test, the movant bears the burden of persuasion, Mattel, Inc. v. Greiner & Hausser GmbH, 354 F.3d 857, 869 (9th Cir. 2003), and must demonstrate a significant threat of irreparable injury. AGCC v. Coalition for Economic Equity, 950 F.2d 1401, 1410 (9th Cir. 1991).

Prison officials have a duty to protect an inmate from violence at the hands of another inmate. Farmer v. Brennan, 511 U.S. 825, 833 (9th Cir. 1994); Hearns v. Terhune, 413 F.3d 1036, 1039 (9th Cir. 2005). "The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." Id. "Deliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts

or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. (citations and internal quotations omitted). "Deliberate indifference occurs if the prison official knew that the inmate faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." Id. at 1042. Prison officials who know of a substantial risk to an inmate's safety "may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844.

## B.    Parties' Contentions

In support of his motion, Plaintiff submits a lengthy declaration, detailing the allegations in his Amended Complaint. (Doc. #93, Pl. Decl.) He alleges that on August 3, 2005, he was transferred to Winslow-Kaibab, a maximum custody, level-4 prison unit. (Id. ¶ 3.) He did not request the transfer. (Id.) According to Plaintiff, placement into a maximum security facility posed a significant threat of danger because of Plaintiff's "protection issues" and the known violent propensities of higher-custody inmates. (Id. ¶ 4.) On November 18, 2005, Plaintiff complained of the possibility that an inmate on his DNHW list was at Kaibab and may have recognized Plaintiff. Plaintiff alleges that Defendant McComas refused to transfer Plaintiff. (Id. ¶ 6.)

On March 8, 2006, Plaintiff was attacked; Plaintiff alleges this was on orders from a prison gang. (Id. ¶ 7.) He asked an inmate why he was attacked, and the inmate told him someone else said Plaintiff was a snitch. (Id.) Plaintiff alleges that he told staff about this, an investigation was conducted, and Lieutenant Hand assessed Plaintiff's risk on a General Population (GP) unit as high. (Id. ¶¶ 9-13.) He asserts that a Detective Hunt of the Tucson Police Department asked Plaintiff about testifying in a bank robbery and tried to convince ADC officials to place Plaintiff in Protective Segregation. (Id. ¶ 14.) Plaintiff asserts that he was almost stabbed because the inmate he was to testify against told others about it. (Id. ¶ 15.) Plaintiff alleges that ADC officials determined in April 2007 that it was not safe for Plaintiff to be on the yard. (Id. ¶ 16.)

On May 11, 2007 Plaintiff was transferred to the Lewis-Buckley Unit. (Id. ¶ 18.) Plaintiff was attacked on May 12, 2007, by an inmate who was "mistakenly left off

- 3 -

1
2
3

[Plaintiff's] DNHW list." (Id.)  On June 29, 2007 Plaintiff informed ADC officials that an inmate on Plaintiff's DNHW list was five cells away from him.  (Id. ¶ 20.)  He alleges that the inmate told another inmate that Plaintiff was a snitch.  The inmate was moved.  (Id.)

4
5
6
7
8
9
10
11
12
13

On July 14, 2007, an officer became disrespectful toward Plaintiff, so Plaintiff told the officer he would grieve him.  (Id.)  The officer then told other inmates in the pod that they had Plaintiff to thank for losing their showers.  (Id.)  A female officer allegedly told other inmates that they "need to do something about [Plaintiff].  My head's turned."  (Id.)  Plaintiff was subsequently attacked; he was severely beaten and medi-vac'd to the hospital.  (Id. ¶ 21.)  Plaintiff was told he would be transferred back to GP in a maximum-custody unit. (Id.)  Plaintiff asserts that the July 2007 attack was, at least, in part because an inmate told others that Plaintiff was a snitch and because Hispanic inmates told him that they were trying to fulfill the contract on Plaintiff's life.  (Id. ¶ 23.)  Plaintiff claims that he has made 11 requests for placement in protective segregation.  (Id. ¶ 30.)

14
15
16
17
18
19
20
21
22
23
24
25

In addition to the declaration, Plaintiff submits approximately 70 pages of documents, including McComas' Responses to Requests for Admissions (id., Ex. 4); Rollins' Responses to Plaintiff's First Request for Interrogatories (id., Ex. 6); Rollins' Response to Requests for Admissions (id., Ex. 7); Lieutenant D. Head's Response to Plaintiff's First Set of Interrogatories (id., Ex. 5); the declaration of Omar West (id., Ex. 2); and the declaration of Fred Coughlin (id., Ex. 3).  McComas admits that Kaibab Administrators assessed Plaintiff's risk on a GP unit as high, that Plaintiff cooperated with Lt. Head in a March 2006 investigation, and that Plaintiff has been labeled a snitch.  (Id. Ex. 4, McComas' Resp. to Req. for Adm., Nos. 6, 9, 10.)  Lt. Head admits that he requested that Plaintiff be placed in Protective Segregation in March 2006; he states that there is no evidence or report that Plaintiff was assaulted;[1] and he admits that inmates knew that Plaintiff was an informant. (Id., Ex. 5, Head's Resp. to 1st Set of Interrog., Nos. 3, 6, 8.)

26
27

In their response, Defendants note that this is Plaintiff's second request for a

28

[1]This appears to refer to the alleged March 8, 2006 assault.

preliminary injunction in this matter and that the first request was denied by the Court on August 15, 2007. (Doc. #97.) They also argue that on August 27, Plaintiff moved for reconsideration of the Court's denial, and he detailed the July 17, 2007 assault. (Id.) The Court denied that request on October 11 and reasoned that "although Plaintiff indicated that he was again assaulted, the record continues to demonstrate that Defendants properly investigated Plaintiff's allegations and made reasonable decisions based on that investigation." (Doc. #71.) Defendants assert that nothing in the current motion is significantly different than the claims previously reviewed and rejected by this Court in October 2007. (Id.) Although Plaintiff claims that he was beaten because there is a contract on his life, the matter was investigated by ADC staff who concluded that Plaintiff joined in a fight involving his cellmate. They submit a report of the investigation that indicates that the fight was over tobacco and money. (Doc. #95, Ex. A.) The Deputy Warden concurred, finding that Plaintiff should be placed in a different GP unit, that Plaintiff was not the initial target of the assault, and that it was not a Security Threat Group (STG) issue. (Id.)

In his reply, Plaintiff argues that the difference between the current motion and his motion for reconsideration is "obvious." (Doc. #102 at 1.) The Court denied the motion for reconsideration based mainly on Plaintiff's evidence because Plaintiff did not demonstrate a likelihood of success on the merits or a risk of imminent danger. (Id., see Doc. #62.) Plaintiff also submits a supplemental document alleging that on March 28, 2008, he was transported to the Rynning Unit, a level-4 GP unit, and he was attacked by inmate Turner, who is on Plaintiff's DNHW list. (Doc. #103 at 1-2.) Plaintiff alleges that Turner followed Plaintiff to his cell where several inmates were waiting. (Id. at 2.) Another inmate said that he was going to get his shank and attack Plaintiff if Plaintiff was still there when he returned. Plaintiff was attacked by his cellmate as he was going to report the threat, and Turner shoved Plaintiff down the stairs. (Id.)

By Order dated May 2, 2008, the Court directed Defendants to respond to Plaintiff's allegations of a March 28, 2008 assault and gave Plaintiff an opportunity to reply to the supplemental response. (Doc. #115.) Defendants respond that Plaintiff is still undergoing

the Protective Segregation process, known as DI67, which he initiated due to the alleged assault and that he is segregated from GP inmates during this process.  (Doc. #126 at 1.) They argue that because his concerns are being investigated, Defendants cannot be deliberately indifferent to Plaintiff's safety.  (Id.)  They also allege that it appears that Plaintiff instigated the fight in order to bolster his claim that he needs Protective Segregation. (Id. at 2.)  Defendants' Investigative Report shows that 30 minutes before the assault, Plaintiff reported to an officer that he would stay on the yard until threatened.  (Id., Ex. A.) Later, Plaintiff alleged that he was punched in the mouth in a dispute over a television and that other inmates made threats because of his Protective Segregation issues.  (Id.)

But ADC's investigation showed that Plaintiff poured liquid into his cellmate's television to instigate a fight as a pretense for claiming a need for Protective Segregation. (Id.)  In addition, other inmates also threatened Plaintiff over the television, not because of Protective Segregation issues.  (Id.)  According to Defendants, Plaintiff also claims that he asked to be seen by medical, and he contradicts his own statement that he was assaulted due to a dispute about the television, claiming in medical documents that he was pushed down the stairs.  (Id. at 2-3.)

Plaintiff replies that he did not instigate the fight.  (Doc. #132 at 1.)  He alleges that when he arrived at Rynning, he was told to go to the yard and was threatened with disciplinary action if he refused, so he said that he would go until he was threatened.  (Id.) When he walked into the yard, he was followed by inmate Turner, who is on Plaintiff's DNHW list.  (Id. at 2.)   He disputes that he spoke with ADC investigative staff about the assault.  (Id.)  He denies pouring water into the television set and alleges that he never even made it back to the cell. He also complains about the medical care.  (Id. 2-3.)  He alleges that inmates in his position are routinely denied protection and that Schriro is attempting to reintegrate Protective Segregation inmates back into GP.  (Id.)

## C.    Analysis

The Court will deny Plaintiff's request for an order placing him in Protective Segregation.  Even if there is some evidence to support Plaintiff's claim regarding the alleged

failure to protect him from the March 2006 assault, that assault took place two years ago, and the Court has already considered this and the July 2007 assault and denied Plaintiff's requests for placement in Protective Segregation.  Defendants assert, and Plaintiff does not dispute, that he is currently being evaluated for placement in Protective Segregation pursuant to his latest claim of assault and that as part of that evaluation, he is separated from GP inmates. Thus, there is no immediate threat of injury.  In attempting to establish either eligibility for an injunction or that a movant is not entitled to injunctive relief, the parties may rely on developments that postdate the pleadings and pretrial motions.  Farmer, 511 U.S. at 846.  In addition, Defendants assert that their investigation shows that Plaintiff instigated the fight as a pretense for claiming the need for Protective Segregation.  And the Court notes that Plaintiff's descriptions of the event appear contradictory—he initially claimed that Turner followed Plaintiff to his cell where several inmates were waiting, but now he states that he could not have damaged the television set because he never made it back to the cell.  Plaintiff has not met his burden to demonstrate entitlement to a preliminary injunction.  See Mattel, Inc., 354 F.3d at 869.

The Court will deny the motion.

**IV.    Motion for Sanctions**

Plaintiff seeks sanctions against Rollins, claiming that Rollins responded to Plaintiff's request for admissions by denying that Plaintiff would be returned to the higher-custody, level-4 GP.  (Doc. #106, Rollins' Req. To Adm., No. 5.)  On March 28, 2008, Plaintiff was moved to Rynning Unit, which is a maximum custody, level-4 unit.  (Doc. #106 at 2.) Plaintiff asks the Court to sanction Rollins for perjury.  (Id. at 3.)

Defendants respond that on March 29, 2008, more than two months after Rollins answered the Request for Admissions on January 18, 2008, Plaintiff's housing was changed to SMU, which is a higher-classification-risk unit.  (Doc. #109 at 1-2.)  Defendants argue that at the time Rollins answered, he did so truthfully and in good faith, and that even if it was not, Plaintiff's remedy is under Federal Rule of Civil Procedure 37(c)(2), which provides for recovery of the "reasonable expenses incurred in making the proof."  (Id. at 2.)

1      Plaintiff replies that Defendants "argue that though I would not be returned to

2  maximum level 4 G.P. was denied, it is as true today as when it was made." (Doc. #113.)

3  He argues that Defendants were under a duty to amend their responses, pursuant to Federal

4  Rule of Civil Procedure 26(e)(2).  Plaintiff "leave[s] it to the Court to determine what

5  sanctions should be imposed." (Id. at 2.)

6      The Court will deny the motion for sanctions as there is no proof that Rollins knew

7  the information to be incorrect at the time he responded and Plaintiff has not demonstrated

8  how the admission was of substantial importance.  See Fed. R. Civ. P. 37(c)(2)(B).

9      **IT IS ORDERED:**

10     (1)    Plaintiff's Motion for an Order to Show Cause and Preliminary Injunction

11 (Doc. #92) is **denied.**

12     (2)    Plaintiff's Motion for Sanctions (Doc. #106) is **denied**.

13     DATED this 15th day of August, 2008.

_____
Mary H. Murguia
United States District Judge

- 8 -